### J. A. HOLLOMAN v. SOUTHERN RAILWAY COMPANY.

(Filed 1 November, 1916.)

**1. Carriers of Goods—Notice of Arrival—Mail—Evidence—Actual Notice.**

Where there is evidence that the carrier mailed a postal card to the consignee of a shipment of goods, giving due notice of the arrival, in accordance with the rules of the North Carolina Corporation Commission, and that it was properly addressed and put into the postoffice, it is presumed to have been received, in the absence of evidence that it was not, and is sufficient to take the question to the jury. *Semble*, actual notice of the arrival of the goods dispenses with the formal written notice.

**2. Carriers of Goods—Notice of Arrival—Written Notice—Parol Evidence.**

The written notice required by the North Carolina Corporation Commission to be given by the carrier to the consignee of goods is a matter collateral to the issue of whether the latter is responsible to the former for storage charges accrued, and admits of parol evidence of its contents.

**3. Carriers of Goods—Damaged Condition—Accepting Goods—Worthless Condition.**

Where goods transported by the carrier are claimed by the consignee to have arrived at their destination in bad condition, it is the latter's duty to receive the goods and sue for damages unless they are rendered practically worthless.

**4. Same—Action—Estoppel.**

Where the consignee of goods has refused to receive them because of their damaged condition unless the carrier would accept a receipt to that effect, and sues for the damages, and then for possession of the goods, after a judgment adjudicating the amount of the damages, but leaving open the question of title and right of the defendant to storage charges, he is estopped to claim that the goods were in a condition practically worthless at the time he refused to accept them.

**5. Carriers of Goods—Damaged Condition—Storage Charges—Claim Rejected —Inconsistent Defenses.**

Where the consignee has refused to accept a shipment of goods because of their alleged damaged condition, and contends that the carrier agreed to keep them, without charge, pending an adjustment, and it is shown that the carrier wrote him a letter positively declining to allow the damages claimed by him, whereupon he had brought suit to recover them: *Held*, if any such agreement had been entered into, it terminated upon the refusal of the carrier to consider the claim for damages; it was also inconsistent with the plaintiff's action therefor, and the carrier is entitled to recover its proper charges for storage.

**6. Carriers of Goods—Storage Charges—Services Rendered—Consideration.**

Storage charges are allowed the carrier for the service rendered in taking care of the goods, the inconvenience to the warehousemen, and the liability for their safe custody if they do not exercise proper care.

**7. Carriers of Goods—Storage Charges—Liens.**

A carrier has a lien upon the goods for its proper storage charges therefor, and may hold them until the charges are paid or properly tendered.

**8. Appeal and Error—Brief—Exceptions—Waiver.**

Where the appellant excepts to the allowance of storage charges awarded to the carrier of goods, and no point is made in the brief as to the time for which they are allowed, it is waived under the rule of the Supreme Court.

CIVIL ACTION tried before *Long, J.,* and a jury, at May Term, 1916, of FORSYTH.

The action was brought for the recovery of certain knitting mill machinery which was shipped from Raleigh, N. C., to the plaintiff at Kernersville, N. C. When the machinery arrived at Kernersville it was found to be in a damaged condition, and plaintiff refused to receive it, according to plaintiff's version of the facts, unless the defendant

would take a qualified receipt for it, showing its bad condition, which defendant declined to do. The machinery was, therefore, placed in defendant's warehouse. Plaintiff brought suit in Guilford Superior Court to recover damages for the injury to the machinery, and got a judgment for $1,500 at February Term, which contained this clause: "It is therefore ordered and decreed that this judgment is without prejudice to the rights of plaintiff as to the ownership and possession of the machinery described in the complaint, and as to the right of defendant to demurrage and freight charges and storage." Plaintiff then commenced this action against defendant in Forsyth County to recover possession of the machinery, and defendant set up its claim for storage, under the storage and demurrage rules of the State Corporation Commission, amounting to $724.27. At the trial the jury returned the following verdict:

1. Is the plaintiff the owner and entitled to possession of the property described in the complaint, subject to such lien, if any, as the defendant may have for freight and storage charges? Answer: "Yes."

2. In what sum, if any, is the plaintiff indebted to the defendant for freight and storage charges? Answer: "$342.08."

3. Is the said property subject to lien in favor of the defendant for said amount of freight and storage charges? Answer: "Yes."

The court entered a judgment upon the verdict in favor of the plaintiff for the property, subject to the lien of defendant for its storage charges as awarded by the jury, and in favor of defendant for said charges declaring therein a lien upon the machinery and appointing a commissioner to sell the same if the storage charges were not paid. Plaintiff appealed.

*L. M. Swink and Philip Williams for plaintiff.*
*Manly, Hendren & Womble for defendant.*

WALKER, J., after stating the case: The plaintiff, in his brief, states his contention as follows:

"The judgment in this case is clearly erroneous in adjudging that the defendant is entitled to recover storage charges, because:

"1. The defendant's right to recover storage charges is dependent upon notice of the arrival of the shipment in accordance with the rules of the Corporation Commission; and there was no competent evidence to prove such notice.

"2. The defendant was estopped from asserting the right to claim storage charges.

"3. The court decided as a matter of law that the right to charge storage had not been waived."

We are of the opinion that none of these several contentions should prevail. There was ample evidence that notice of the arrival of the machinery was promptly given. This was done by postal card properly addressed and mailed and presumed to have been received by the plaintiff, in the absence of evidence that it was not. *Model Mill Co. v. Webb,* 164 N. C., 87; *Trust Co. v. Bank,* 166 N. C., 112. It has been held that where the consignee has actual notice that the goods have arrived and that the carrier is ready to deliver them at his depot, it dispenses with any formal written notice of the fact; nor could he demand it, 4 R. C. L., p. 755; *Normile v. N. P. Railroad Co.,* 67 L. R. A., 271; but we do not decide as to this view, as we have held that sufficient notice was given. Plaintiff objected to oral evidence in regard to mailing the postal card announcing the arrival of the machinery; but this position is not tenable, as the mailing and contents of the postal card are matters collateral to the issue and not the subject-matter of the litigation. It was held in *Ledford v. Emerson,* 138 N. C., 502, that the rule excluding parol evidence as to the contents of a written instrument applies only in actions between parties to the writing, when the enforcement of any obligation created by it is substantially the cause of action. 1 Greenleaf on Ev., 275, 279; *Pollock v. Wilcox,* 68 N. C., 50; *Reynolds v. Magness,* 24 N. C., 26; *Carden v. McConnell,* 116 N. C., 875; *Belding v. Archer,* 131 N. C., 287; *S. v. Credle,* 91 N. C., 640; *Jones v. Call,* 93 N. C., 170. The last two cases related to notices, and it was there held that the rule requiring the production of the writing itself as the best proof of what it contains does not extend to mere notices, which persons are not expected to keep. 1 Greenleaf on Ev., sec. 561.

The other objections of the plaintiff, as to estoppel and waiver, are correlated and may be considered together. If these questions are properly raised there is nothing for them to rest upon. The matter resolved itself into one of fact, whether the defendant had kept the machinery in its warehouse on storage, or held it, under an agreement with the plaintiff, until defendant could investigate the dispute between them, as to condition of the machinery and the liability therefor, and either accept or reject the plaintiff's proposal as to payment for the damage, or until the matter was otherwise adjusted. The court, in a very clear and impartial statement of the contentions, submitted this question of fact to the jury, instructing them that if they found that the plaintiff's version was the correct one, to answer the second and third issues against defendant. The jury seem to have found with the plaintiff, anyhow, at least to some extent, for the defendant was certainly entitled to charge storage from the time plaintiff received the Hooper letter declining to pay any damages, and the jury only allowed

for storage charges from that date. It was then the duty of plaintiff, as consignee, to take the machinery and sue for the damages, as defendant had declined to pay anything, and, therefore, there was nothing to adjust. Plaintiff is not in a position to say that the machinery was so badly damaged as to be worthless, and, therefore, no obligation rested upon him to receive it, as he has recovered damages for injuries to it, and has brought this suit for the machinery itself. In his former action plaintiff's position was that the machinery was only damaged and not practically destroyed, and, in this action, he takes the same position by asking for the possession of the property. He will not, therefore, be allowed to repudiate his former contention by now alleging that it had become worthless by defendant's act and, therefore, he should not be charged for keeping it in storage. If it was his property, and worth anything, he is chargeable with storage after the defendant had refused to comply with his demand, and the jury so found under correct instructions. Plaintiff's attitude would seem to fall within the very principle he invokes in his brief against the defendant: "Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title, or right, he cannot afterwards assume a position inconsistent with such act, claim, or conduct to the prejudice of another." 16 Cyc., p. 785. "A claim made or position taken in a former action or judicial proceeding will estop the party to make an inconsistent claim or take a conflicting position in a subsequent action or judicial proceeding to the prejudice of the adverse party, where the parties are the same and the same questions are involved." 16 Cyc., p. 799; *Williams v. Scott,* 122 N. C., 545; *Chard v. Warren,* 122 N. C., 75; *Brantley v. Kee,* 58 N. C., 332; *P. W. & B. Railroad Co. v. Howard,* 54 U. S., 13; *Davis v. Wakelee,* 156 U. S., 680, 692. The contention is not open to the plaintiff that the defendant held the goods under an agreement for adjustment and an implied understanding that no charge for storage would be made, when it had received a letter from defendant assuming an adversary position towards his claim and positively refusing to pay it, and he had actually brought suit to recover damages upon the theory, of course, that the agreement as to an adjustment of the controversy was at an end. These are inconsistent positions. The plaintiff could not, in this way, benefit by the legitimate services of the defendant and not pay the reasonable value of them as fixed by the law and the defendant's tariff schedules. 4 Ruling Case Law, p. 864, sec. 316, and pp. 868, 873. We have decided a case at this term, *R. R. v. Iron Works, ante,* 188, which fully sustains this view. *Justice Hoke,* referring to a dispute, where a shipment had been refused by the consignee, said

in that case: "The consignee is entitled to collect reasonable storage charges until, in exercise of its rights under the law, the goods could be properly disposed of and both parties thereby relieved of further charge concerning them. . . . It is urged for defendant that no storage charges should be allowed after defendant had in express terms refused the shipment, as plaintiff could have proceeded immediately to enforce its lien; but the position cannot be approved. The railroad company should not be required to take the risk of such a course, but is entitled to proceed in an orderly way to enforce its right, and the authorities are to the effect that a common carrier is not relieved of all responsibility by refusal of the shipper to receive the freight, but is required to store and properly care for the goods as warehouseman under established rules of law."

In that opinion attention is also called to the common-law rule giving a lien for storage, enforcible by action in the courts, and the change effected by our statute, under which the carrier may sell the goods after the lapse of a given time. Revisal, secs. 2637, 2638. The Court also held, in the same case, that the carrier was entitled to recover for storage, "not for the entire time which had elapsed since the shipment was refused, but is restricted to the time when he could have relieved himself of the charge by sale pursuant to the statute."

In respect to the time for which storage should be allowed, there is a distinction between that case (*N. and S. R. R. Co. v. New Bern Iron Works*) and this one. There the consignee rejected the goods altogether and out and out, while here the plaintiff claims the goods as his own in this very action, and having thus left his property in storage with the defendant, it is nothing but right, and it is the law, that he should pay the reasonable charges for keeping it. Compensation is allowed for storage because of the service rendered in taking care of the goods and the inconvenience to the warehouseman, and also the liability for their safe custody if proper care is not exercised. 4 R. C. L., sec. 316; *Miller v. R. R.*, 88 Ga., 563, 572; *R. R. v. Mfg. Co.*, 142 Ala., 322. It is said in the *Miller case, supra:* "It is well settled that the carrier, in addition to its compensation for the carriage of goods, has the right to charge for their storage and keeping, as a warehouseman, for whatever time they remain in its custody after reasonable opportunity has been afforded the owner to remove them. Hutchison Carriers. 378; *Southwestern R. Co. v. Felder*, 46 Ga., 433." The carrier also has a lien for his freight and charges for storage, and may hold the goods until they are paid or properly tendered. 4 R. C. L., sec. 320. So that the defendant was entirely within its right in holding the goods, and the plaintiff was in the wrong for not taking them when it had the

opportunity to do so and reasonable time within which to do it. Having failed in his duty, he must pay the legal charges for storage. There is no point made in the brief as to the time for which storage should be allowed, and, therefore, if there had been any error in this respect, it would be waived under our rule.

There was no error in the rulings of the court.